UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**SEMS, INC.**

**VERSUS**

**RICHARD W. "RICKY" LEE, ET AL.**

**CIVIL ACTION**

**NO. 22-866-JWD-RLB**

### RULING AND ORDER

Before the Court is a *Fed. R. Civ. P. 12(b)(6) and 13(a) Motion to Dismiss*, (Doc. 8), (the "*Motion*") filed by Defendants Richard W. Lee ("Mr. Lee"); Hannah Naquin ("Ms. Naquin"); and Bruin Environmental and Remediation Services, LLC ("Bruin") (collectively, "Defendants"). Plaintiff SEMS, Inc. ("SEMS") opposes the *Motion*, (Doc. 20), and Defendants have filed a reply, (Doc. 23). Oral argument is not necessary. The Court has carefully considered the law, the facts in the record, and the arguments and submissions of the parties and is prepared to rule. For the reasons stated below, Defendants' *Motion* is DENIED.

**I.    RELEVANT FACTUAL AND PROCEDURAL HISTORY**

The dispute between SEMS and Defendants arose on January 15, 2021, when Mark Morgan ("Mr. Morgan"), the founder and majority owner of SEMS, demoted the then-fifty-six-year-old Mr. Lee from his role as President of SEMS and replaced him with then-thirty-seven-year-old Adam Morgan. (Doc. 1 at 2–5; *see also* Doc. 23 at 4.) As a result, Mr. Lee initiated an age discrimination complaint with the United States Equal Employment Opportunity Commission on January 31, 2021. (Doc. 1 at 2–5; Doc. 23 at 4.) However, on November 2, 2021, before Mr. Lee could file his age discrimination suit, SEMS filed its first lawsuit ("*SEMS I*") in Louisiana state court against Mr. Lee and others. (*See* Doc. 1 at 2–5; Doc. 23 at 4; Doc. 8-1.)

### A. *SEMS I*

In its initial petition, SEMS claimed that Mr. Lee and his daughter, Hannah Naquin, put into motion a plan to set up their own competing company, using the funds Mr. Lee expected from the buyout of his minority interest in SEMS, as well as confidential and proprietary information to be wrongfully misappropriated from SEMS, including client lists and contact information. (Doc. 8-1 at 3). SEMS specifically alleged that "[Mr. Lee and Ms. Naquin] unlawfully accessed the company's confidential and proprietary information in order to further the business interests of" Bruin—a direct competitor of SEMS. (Doc. 20 at 2.) Further, SEMS alleged that Mr. Lee and Ms. Naquin did not return property obtained after resigning. (*Id.*) In all, SEMS detailed several causes of action in its complaint, including: (1) revendication of stolen property, (2) two violations of the Louisiana Uniform Trade Secrets Act, (3) breach of fiduciary duty, and (4) civil conspiracy. (Doc. 8-1 at 6–13.)

In response to the November 2, 2021, petition, and pursuant to Louisiana Code of Civil Procedure article 1061, Mr. Lee filed a Reconventional Demand—Louisiana's analogue to a compulsory counterclaim—for violation of the Age Discrimination in Employment Act ("ADEA") and Louisiana Age Discrimination in Employment Act ("LADEA"). (Doc. 20-3 at 15–22; Doc. 20 at 2.) On February 2, 2022, SEMS subsequently removed its case to federal court. (Doc. 16-4; Doc. 20 at 2.) On February 23, 2022, after removal, SEMS filed an answer to the reconventional demand. (Doc. 16-5.)

On March 4, 2022, the defendants filed a motion to remand, arguing that a counterclaim cannot provide basis for federal question jurisdiction. (Doc. 16-6.) The Court ultimately determined that removal was impermissible and remanded the case back to state court. (Doc. 16-12; Doc. 20 at 3.) According to the parties, *SEMS I* remains pending. (Doc. 20 at 3.)

### B. *SEMS II*

On November 4, 2022, SEMS filed the instant action against Defendants ("***SEMS II***"), rather than filing a counterclaim with the answer it filed on February 23, 2022. (Doc. 1.) In its complaint, Plaintiff claims that both during and after their employment Mr. Lee and Ms. Naquin unlawfully accessed and used the company's confidential and proprietary information to solicit business on behalf of Bruin—a company for which Mr. Lee is the managing member. (*Id.* at 3.) Accordingly, Plaintiff brings six causes of action against Defendants: (1) violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e) ("CFAA"); (2) violations of the Defend Trade Secrets Act, 18 U.S.C. § 1839(3) ("DTSA"); (3) violations of § 1431 of the Louisiana Uniform Trade Secrets Act ("LUTSA"); (4) breach of fiduciary duty; (5) unjust enrichment; and (6) civil conspiracy. (*Id.* at 7–13.)

### C. The Present Motion

On January 3, 2023, Defendants filed the instant *Motion* arguing that the claims asserted by Plaintiff in *SEMS II* should have been asserted as compulsory counterclaims in *SEMS I* in response to Mr. Lee's reconventional demand. (Doc. 8.) Defendants explain that *SEMS II* should be dismissed because "[t]he factual allegations contained in [*SEMS II*] are absolutely identical to the factual allegations of SEMS' November 2, 2021, Petition in *SEMS I*." (Doc. 8-13 at 4.) Moreover, Defendants urge that "all causes of action asserted by SEMS [in *SEMS II*] arise from identical factual allegations" as the claims in *SEMS I*. (*Id.*) Accordingly, *SEMS II* should be dismissed (*Id.*)

Plaintiff opposes the motion, alleging that the Fifth Circuit has never recognized a counterclaim-in-reply to another counterclaim as a legitimate or required pleading. (Doc. 20 at 3). Plaintiff further argues that even if this Court were to recognize a counterclaim-in-reply as a valid

3

pleading, the claims Plaintiff asserted "in this matter cannot be construed as compulsory counterclaims in response to Mr. Lee's reconventional demand." (*Id.*) As such, Plaintiff was not required to bring its instant claims in response to Mr. Lee's reconventional demand. (*Id.*)

Defendants replied to Plaintiff's opposition, claiming that Plaintiffs were wrong to rely on *Iniesta v. Ula's Washington, LLC*, No. CV-H-17-2688, 2018 WL 3912256, at *3 (S.D. Tex. July 18, 2018. (Doc. 23.) Defendants claim that "*Iniesta* is wholly inapposite . . . because the conclusion in *Iniesta* relied on the court's finding that 'Defendants' theft, conversion and fraud counterclaims are not party of the "same" case of controversy as Plaintiff's FLSA claims so as to warrant the exercise of supplemental jurisdiction over them.'" (*Id.* at 5 (citing *Iniesta*, 2018 WL 3912256, at *3).) Whereas here, Defendants contend that "SEMS . . . acknowledged that its claims against [Defendants] arise from the same aggregate of operate facts as Mr. Lee's claims against SEMS" because SEMS admitted the claims were related for supplemental jurisdiction purposes. (*Id.*) Thus, Defendants claim that "[t]he present effort by SEMS to reverse its position regarding the clear interconnectedness of the claims asserted by SEMS and Mr. Lee in *SEMS I* and *SEMS II* is disingenuous at best." (*Id.*)

## II.   RELEVANT STANDARDS

### A. Rule 12(b)(6) Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Hamilton v. Dall. Cnty.*, No. 21-10133, 2023 WL 5316716, at *3 (5th Cir. Aug. 18, 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Iqbal*, 556 U.S. at 678).

"To be plausible, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555). "In deciding whether the complaint states a valid claim for relief, we accept all well-pleaded facts as true and construe the complaint in the light most favorable to the plaintiff." *Id.* (citing *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008)). The Court does "not accept as true 'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Id.* (quoting *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007)). "A claim for relief is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citing *Iqbal*, 556 U.S. at 679).

The Court's "task, then, is 'to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 854 (5th Cir. 2012) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir.2010) (citing *Iqbal*, 556 U.S. at 678)). "[A] claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct].'" *Calhoun v. City of Houston Police Dep't*, 855 F. App'x 917, 919–20 (5th Cir. 2021) (per curiam) (quoting *Twombly*, 550 U.S. at 556).

Additionally, "[i]n determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is limited to (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which

5

judicial notice may be taken under Federal Rule of Evidence 201." *Inclusive Cmtys. Project, Inc. v. Lincoln Prop. Co.*, 920 F.3d 890, 900 (5th Cir. 2019) (citations omitted). Court documents are matters of which this Court has taken judicial notice. *See Frampton v. City of Baton Rouge/Par. of E. Baton Rouge*, No. 21-362, 2022 WL 90238, at *6 n.67 (M.D. La. Jan. 7, 2022) (deGravelles, J.) (taking judicial notice of Court document as matter of public record in ruling on motion to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6)) (citing *Fetty v. La. State Bd. of Priv. Sec. Exam'rs,* No. 18-517, 2020 WL 448231, at *8 (M.D. La. Jan. 28, 2020) (deGravelles, J.); *Duncan v. Heinrich*, 591 B.R. 652, 655 n.2 (M.D. La. 2018) (deGravelles, J.)).[1]

### B. Counterclaims and Counterclaims-in-Reply

Federal Rule of Civil Procedure 13(a) provides that a pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim (1) arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim; and (2) does not require adding another party over whom the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a)(1). "If a party fails to bring a compulsory counterclaim in the original action, it is barred from asserting the claim in a later suit." *RPV, Ltd. v. Netsphere, Inc.*, 771 F. App'x 532, 534 (5th Cir. 2019) (citing *Baker v. Gold Seal Liquors, Inc.*, 417 U.S. 467, 469 n.1 (1974)).

The Fifth Circuit also has held that, *inter alia*, "[a] counterclaim is compulsory when . . . . there is [a] logical relationship between the claim and the counterclaim." *N. Cypress Med. Ctr. Operating Co. v. Cigna Healthcare*, 781 F.3d 182, 205 n.146 (5th Cir. 2015) (citation omitted).

---

[1] The Court also notes that, "[a]lthough a 'court may also consider documents attached to either a motion to dismiss or an opposition to that motion when the documents are referred to in the pleadings and are central to a plaintiff's claims,' . . . the court need not do so." *Brackens v. Stericycle, Inc.*, 829 F. App'x 17, 23 (5th Cir. 2020) (per curiam) (quoting *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014)). *See also Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (using permissive language regarding a court's ability to rely on documents incorporated into the complaint by reference)).

"A logical relationship exists 'when the counterclaim arises from the same "aggregate of operative facts" in that the same operative facts serve[ ] as the basis of both claims[.]'" *RPV, Ltd*, 771 F. App'x at 535 (citation omitted).

While the rules on counterclaims generally appear clearcut, the issue here is thornier. That is because district courts have found that "[t]he procedural propriety of 'counterclaims in reply' is tangled . . . ." *Healthe, Inc. v. High Energy Ozone LLC*, No. 6:20-cv-2233-RBD-EJK, 2021 WL 2939924, at *1 (M.D. Fla. June 17, 2021) (citing *Wiggins v. FDIC*, No. 2:12-cv-02705, 2017 WL 4517309, at *4 (N.D. Ala. Oct. 10, 2017); Fed. R. Civ. P. 7(a)). Indeed, district courts disagree about the procedural propriety of counterclaims-in-reply. *Id.*

For example, in *Gonzalez v. Central Electric Co-op, Inc.*, the District Court of Oregon held that counterclaims-in-reply were "procedurally improper." *Gonzalez v. Cent. Elec. Co-op, Inc.*, Nos. 08-6236-HO, 08-6240-HO, 2009 WL 3415235, at *1 (D. Or. Oct. 14, 2009). In that case, the plaintiff filed a lawsuit against his former employer and subsequently amended his complaint. *Id.* The defendant employer answered the amended complaint and included several counterclaims implicating a third party. *Id.* After that, the "[p]laintiff and third-party defendant each filed a reply asserting . . . counterclaim[s]." *Id.* The Oregon court held this was improper because "Rule 7(a) . . . does not permit the plaintiff and [third party] to include 'counterclaims' in repl[y]." *Id.* at *5. "Nor does [Rule 7(a)] permit the filing of a reply to a complaint without leave of court." *Id.* As such, the court dismissed the counterclaims-in-reply but construed them as "answers to the defendants' counterclaims and . . . consider[ed] the[m] affirmative defenses alleged therein." *Id.*

Conversely, in *Electroglas, Inc. v. Dynatex Corp.*, the Northern District of California held that a counterclaim-in-reply was permissible. *Electroglas, Inc. v. Dynatex Corp.*, 473 F. Supp. 1167, 1171 (N.D. Cal. July 13, 1979). In that case, two plaintiffs sued two defendants seeking

7

treble damages pursuant to the Sherman and Clayton Acts after a distributor agreement was terminated. *Id.* at 1169. The defendants each filed separate counterclaims. *Id.* In response, the plaintiffs filed counterclaims-in-reply for, "breach of the duty of contractual good faith and fair dealing and unjust enrichment." *Id.* The court held that the counterclaim-in-reply was permissible because it arose "out of the same transaction which [wa]s the subject matter of the defendant's counterclaims." *Id.* at 1171. In other words, the court found that the counterclaim-in-reply was permissible because it was compulsory. *Id.*

In still another twist, in *Lincoln Savings Bank v. Open Solutions, Inc.*, the Northern District of Iowa held that counterclaims-in-reply are only permissible when the original counterclaim— the defendant's counterclaim—is permissive. *See Lincoln Sav. Bank v. Open Sols., Inc.*, 956 F. Supp. 2d 1032, 1038–40 (N.D. Iowa 2013). There, the plaintiff filed a complaint against the defendant for breach of contract. *Id.* at 1036. Later, the defendant filed an answer that included counterclaims for breach of contract and declaratory relief. *Id.* After, the plaintiff answered the defendant's counterclaim and asserted two counterclaims-in-reply for fraud and negligent misrepresentation. *Id.* at 1037–38. Relying on district court decisions in the Eighth Circuit, the court explained that "plaintiffs [are allowed] to file counterclaims-in-reply when such counterclaims are compulsory and in response to permissive counterclaims." *Id.* at 1038 (citing *Feed Mgmt. Sys., Inc. v. Brill*, 518 F. Supp. 2d 1094, 1096 (D. Minn. 2007). Finding that the defendant's counterclaim was compulsory, the court "conclude[d] that [the plaintiff's] counterclaims to [the defendant's] compulsory counterclaims [were] not a permitted pleading." *Id.* at 1040. However, the court did note that several courts have construed counterclaims-in-reply as "an amendment to the pleading[]" which could be granted pursuant to Rule 15(a). *Id.*

A fourth option: in *Century Pacific, Inc. v. Hilton Hotels Corp.*, the Southern District of New York, on its own accord, construed a counterclaim as a motion to amend. *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 213 n.3 (S.D.N.Y. 2007). The court wrote, "[w]hat Plaintiffs self-styled as a 'Counterclaim' should, in fact, have been brought by seeking leave to amend the Complaint." *Id.* "Nevertheless, a reply counterclaim is to be treated as a motion to amend the complaint under Rule 15(a). In order to reach the full extent of Defendants' Motion for Summary Judgment at issue here, such a motion is deemed made and granted." *Id.*

Lastly, in *Power Tools & Supply, Inc. v. Cooper Power Tools*, *Inc.*, the Eastern District of Michigan held that according to "the plain language of Rules 7 and 13[,]" counterclaims-in-reply are permissible. *Power Tools & Supply, Inc. v. Cooper Power Tools, Inc.*, No. 05-CV-73615, 2007 WL 1218701, at *2 (E.D. Mich. Apr. 20, 2007). The court explained that "a reply to a counterclaim denominated as such " is a permissible pleading per Rule 7(a). *Id.* Additionally, the court explained that under Rule 13, "'a pleading shall state as a counterclaim any' compulsory counterclaim[.]" *Id.* (citation and emphasis omitted). The court concluded, "by the plain language of the rules . . . a counterclaim may be raised in a pleading, and a reply to a counterclaim is a permissible pleading." *Id.* (citation omitted).

### III.  DISCUSSION

#### A. Parties' Arguments

Defendants contend that the factual allegations made in *SEMS II* are identical to the factual allegations Plaintiff made in *SEMS I*, and as such, *SEMS II* should be dismissed. (Doc. 8-13 at 4; Doc. 23 at 3 (*comparing* Doc. 8-1, *with* Doc. 1).) Defendants point to Federal Rule of Civil Procedure 13(a) for authority. (Doc. 8-13.) Specifically, Defendants emphasize that "[a] pleading must state as a counter claim any claim that – at the time of its service – the pleader has against an

9

opposing party" when the claim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" and "does not require adding another party over whom the court cannot acquire jurisdiction." (*Id.* at 5–6 (citation omitted).) Defendants argue that "[i]f a party fails to bring a compulsory counterclaim in the original action, it is barred from asserting the claim in a later suit." (*Id.* at 6 (quoting *RPV*, 771 F. App'x at 534–35).) Defendants then point to the Fifth Circuit's four question test for determining whether a counterclaim is compulsory:

> A counterclaim is compulsory if any of the following questions can be answered affirmatively: (1) whether the issues of fact and law raised by the claim and counterclaim largely are the same; (2) whether res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) whether substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) whether there is any logical relationship between the claim and the counterclaim.

(Doc. 8-13 at 6 (citing *RVP, Ltd.*, 771 F. App'x at 535).)

Defendants stress the fourth test, the "logical relation test." (Doc. 8-13 at 6.) According to Defendants, "[t]he logical relation test is a loose standard which permits a broad realistic interpretation in the interest of avoiding a multiplicity of suits." (*Id.* (citing *Nat'l Liab. & Fire Ins. Co. v. R & R Marine, Inc.*, 756 F.3d 825, 835 (5th Cir. 2014)).) Defendants then explain that a logical relationship exists "when the counterclaim arises from the same 'aggregate of operative facts' in that the same operative facts serve[ ] as the basis of both claims." (*Id.* (citing *Plant v. Blazer Fin. Servs., Inc. of Ga.*, 598 F.2d 1357, 1360 (5th Cir. 1979)).) Alternatively, Defendants explain that a logical relationship exists when "the aggregate core of facts upon which the claims rests [give rise to] additional legal rights, otherwise dormant, in the defendant." (*Id.* (citing *Plant*, 598 F.2d at 1360).)

In the instant matter, Defendants argue that a logical relationship exists because the factual allegations in *SEMS I* and *SEMS II* are identical and the causes of action "overlap significantly."

10

(*Id.* at 7.) Defendants specifically maintain that "[t]he allegations contained in the [*SEMS II*] Complaint are absolutely identical to the factual allegations" in *SEMS I*. (Doc. 8 at 1.) The Defendants also claim that SEMS asserted the following causes of action in both *SEMS I* and *SEMS II*: violations of the Louisiana Uniform Trade Secrets Act ("LUTSA"); breach of fiduciary duty; and civil conspiracy. (Doc. 8-13 at 7.) Additionally, Defendants contend that the remaining three causes of action in *SEMS II* are "substantially similar [to *SEMS I*] and all arise from the same set of operative facts." (*Id.*) Thus, Defendants argue that SEMS' allegations in the instant matter arise out of the same transaction or occurrence as the complaint in *SEMS I*. (*Id.*)

To support their argument, Defendants rely on *RPV, Ltd. v. Netsphere, Inc.*, where the Fifth Circuit affirmed a motion to dismiss for "failure to assert compulsory counterclaims under circumstances similar to those at issue in the present matter." (*Id.* at 8 (citing *RPV*, 771 F. App'x at 536).) In that matter, the plaintiffs asserted a breach of settlement agreement claim against the defendants ("**Suit I**"). (*Id.* (citing *RPV*, 771 F. App'x 532).) The defendants in that suit then proceeded to file a second, separate lawsuit, ("**Suit II**"), against plaintiffs for breach of the same settlement agreement. (*Id.* (citing *RPV*, 771 F. App'x at 534).) In response to *Suit II*, the plaintiffs filed a motion to dismiss, claiming the defendants were required to assert their complaints as compulsory counterclaims in *Suit I*. (*Id.* (citing *RPV*, 771 F. App'x at 534).) The district court ultimately found that the defendant's claims in *Suit II* were compulsory counterclaims and granted the plaintiff's motion to dismiss, despite *Suit I* being administratively closed before the plaintiff was required to file an answer. (*Id.*) The Fifth Circuit subsequently affirmed the dismissal. (*Id.*) In sum, Defendants argue that because SEMS' complaints in this case meet "the Rule 13([a]) definition of a counterclaim[,]" as the claims did in *RPV*, the claims must be dismissed. (*Id.* at 9.)

Plaintiff responds, first, by arguing that "the Fifth Circuit has never acknowledged a counterclaim in response to another counterclaim as permissible or required . . . ." (Doc. 20 at 4.) Therefore, the Court should not "regard a counterclaim in reply as a valid pleading." (*Id.* at 5.) In support of this proposition, Plaintiff cites to a bankruptcy court decision (*id.* at 4 (citing *In re Pearl Res. LLC*, 643 B.R. 436, 442 (Bankr. S.D. Tex. 2022))), and two district court decisions casting doubt over the procedural propriety of the pleading. (*Id.* at 5 (citing *Healthe, Inc. v. High Energy Ozone LLC*, No. 6:20-CV-2233-RBD-EJK, 2021 WL 2939924, at *1 (M.D. Fla. June 17, 2021); *Classic Indus., LP v. Mitsubishi Chem. FP Am., Inc.*, No. 3:07-CV-1201-P, 2009 WL 10677532, at *3 (N.D. Tex. Mar. 9, 2009)).)

Second, Plaintiff argues that "Defendants cannot show that the claims set forth in *SEMS II* would have been considered compulsory in [*SEMS I*,]" (*id.* at 5), because the claims in this case are "inapposite" from one another and stem from completely different sets of facts. (*Id.* at 7.) With regards to the controlling law, Plaintiff and Defendants do not disagree. (*Id.* at 6 ("A logical relationship exists 'when the counterclaim arises from the same aggregate of operative facts[] in that the same operative facts serve as the bases of both claims or the aggregate core of facts . . . activates additional legal rights.'"); Doc. 23 at 3 (*compare* Doc. 8-13 at 5–6, *with* Doc. 20 at 5–6).) Instead, Plaintiff argues that a logical relationship does not exist here because "the present lawsuit alleges facts regarding Defendants' unlawful use of SEMS' confidential and proprietary information and unauthorized use of SEMS' computer software in order to support its claims under the CFAA, DTSA, and LUTSA" (Doc. 20 at 7.) In contrast, "Mr. Lee's reconventional demand [in *SEMS I*] alleges that he was subject to age discrimination and retaliation during his employment with SEMS and contains numerous alleged instances of discrimination and retaliation." (*Id.* (citing Doc. 20-3 at 10–15).) "Thus, not only are the claims alleged in *SEMS II* and Mr. Lee's

12

reconventional demand inapposite from one another, they also stem from completely different sets of facts." (*Id.*) Plaintiff also attacks Defendant's reliance on *RVP* because it is a case involving "a typical counterclaim" and "not a counterclaim in reply[,]" therefore, it should have "no bearing on the present motion." (Doc. 20 at 7.)

### B. Law and Analysis

The issues at hand are: (1) whether a counterclaim in response to a counterclaim, often referred to as a "counterclaim-in-reply," is permissible or compulsory under the Federal Rules of Civil Procedure; and (2) whether Plaintiff's *SEMS II* claims arise out of the same transaction or occurrence as the Reconventional Demand in *SEMS I*.

First, a counterclaim-in-reply is a permissible pleading. Rule 7(a) enumerates several types of permissible "pleadings" that are available in federal court and bars those that are unenumerated. Fed. R. Civ. P. 7(a). Among those several permissible types is the "answer to a counterclaim designated as a counterclaim." *Id.* Accordingly, an answer to a counterclaim is a valid pleading. *See id.* As a pleading, Rule 13(a)(1) requires that the answer to a counterclaim include "as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party" if the claim *arises out of the same transaction or occurrence* as the opposing party's claim and does not require adding another party over whom the court cannot acquire jurisdiction. Fed. R. Civ. P. 13(a)(1) (emphasis added). Thus, counterclaims in response to counterclaims are permissible.

This analysis is supported by both the Eastern District of Michigan's *Power Tools* decision, 2007 WL 1218701, at *2, and the relevant scholarship:

> One district court has concluded that the federal rules "do not contemplate a counterclaim to a counterclaim," and thus the claim can only be asserted by amending the complaint. . . . The better approach allows a plaintiff to counterclaim in reply to a

13

> counterclaim by simply including the claim in its answer. When a counterclaim is asserted against a plaintiff, an answer is required by Rule 7(a)(3) or the plaintiff risks suffering a default judgment. Because that answer is a pleading, compulsory counterclaims must be included under Rule 13(a), and permissive counterclaims may be included under Rule 13(b). Some courts have reached this result without expressly relying on this reasoning.

3 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE - CIVIL § 13.44 (3d ed. 2023).[2] As aforementioned, while counterclaims in response to counterclaims are permissible, they must be asserted if they arise out of the same transaction or occurrence as the opposing party's claim and do not require adding another party over whom the court cannot acquire jurisdiction. *See* Fed. R. Civ. P. 13(a)(1). *See also* MOORE'S FEDERAL PRACTICE, § 13.44 (citing, *inter alia*, *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 196–97 (2d Cir. 2010) ("When [defendant] raised its counterclaims, [plaintiff] was *compelled* by Rule 13 to file its own claims arising out of the same transaction or occurrence or else be precluded from pursuing those claims in a subsequent lawsuit")).

In the instant matter, SEMS would not have had to add another party over whom the court could not acquire jurisdiction because SEMS had already brought its initial complaint against Defendants. *See Nat'l Liab. & Fire Ins. Co.*, 756 F.3d at 835. Therefore, the only way SEMS' claims in *SEMS II* could be considered compulsory counterclaims is if the claims arise out of the same transaction or occurrence as Mr. Lee's reconventional demand in *SEMS I*.

---

[2] Moore's also states:

> Finally, as to terminology, this section, other commentators, and federal courts consistently refer to the issue as whether a plaintiff may counterclaim in "reply" to a counterclaim. This is explained by the fact that, historically, the responsive pleading to a counterclaim was known as a "reply." The modern terminology of an "answer" to a counterclaim was not adopted until the stylistic revision of Rule 7 in 2007. The difference is purely semantic, and the use of the former term does not affect the analysis.

MOORE'S FEDERAL PRACTICE, § 13.44.

Defendants argue that SEMS' claims in *SEMS II* arise out of the same transaction or occurrence as SEMS' claims in *SEMS I* because the factual allegations and claims in both cases share a logical connection. (Doc. 8-13 at 7.) Plaintiff contends, however, that the proper legal question is actually whether its claims in *SEMS II* share a logical connection with Mr. Lee's reconventional demand in *SEMS I*. (Doc. 20 at 7.)

Plaintiff's contention is correct. Two claims arise out of the same transaction or occurrence when "there [is] any logical relation between the claim and the counterclaim." *Plant*, 598 F.2d at 1360. The Fifth Circuit Court of Appeals has held that "[a] logical relationship exists 'when the counterclaim arises from the same "aggregate of operative facts" in that the same operative facts serve[ ] as the basis of both claims[.]'" *Nat'l Liab. & Fire Ins. Co.*, 756 F.3d at 835 (quoting *Revere Copper & Brass, Inc. v. Aetna Cas. & Sur. Co.*, 426 F.2d 709, 715 (5th Cir. 1970)). When evaluating the compulsory nature of a counterclaim-in-reply, the logical relationship between the counterclaim-in-reply and the defendant's counterclaim is dispositive. *See Power Tools & Supply, Inc.*, 2007 WL 1218701, at *1–3 (weighing plaintiff's counterclaims-in-reply which alleged "breach of contract" against defendant's counterclaims which alleged "breach of contract . . . fraud, and unjust enrichment"); *Feed Mgmt. Sys., Inc.*, 518 F. Supp. 2d at 1098 (weighing plaintiff's counterclaim-in-reply alleging "infringement of several trademarks" against defendant's infringement claims); *Med. Components, Inc. v. Osiris Med., Inc.*, No. EP-15-CV-305-PRM, 2016 WL 7638155, at *4 (W.D. Tex. July 12, 2016) ("Since Plaintiff's Medcomp's Sublicense Counterclaim is directly related to the specific allegations raised in Defendant Osiris's PLA counterclaims, it is appropriate to permit the Sublicense Counterclaim to be raised in reply.") Thus, the proper legal question is whether SEMS' claims in the instant matter "arise from the same 'aggregate of operative facts'" as Mr. Lee's reconventional demand in *SEMS I*.

District courts have interpreted the "aggregate of operative facts" standard in a relatively straight-forward manner. For example, in *Iniesta v. Ula's Washington, LLC*, the Southern District of Texas held that the defendant's counterclaims for theft at work did not arise from the same aggregate of operative facts, and thus, did not share a logical connection with the plaintiff's claims for unpaid wages and overtime. *Iniesta*, 2018 WL 3912256, at *1–2, *3. The court explained that there was no logical connection because the defendant's counterclaims were based on their own "allegations that [the] [p]laintiff pocketed money that was paid by [the] defendant's customers – allegations that ha[d] nothing to do with the number of hours [the] [p]laintiff worked or the manner in which his tips were calculated." *Id.* at *2. As a result, the court found that the defendant's counterclaims for theft, conversion, and fraud did not arise from the same transaction or occurrence as the plaintiff's claims for unpaid wages and overtime, and thus, were permissive counterclaims. *Id.*

Conversely, in *Reyes v. Bona 1372, Inc.*, the Eastern District of Texas held that the defendant's counterclaims for fraud, conspiracy, breach of fiduciary duties, and conversion shared a logical connection with the plaintiff's claims for overtime and unpaid wages. *Reyes v. Bona 1372, Inc.*, No. 1:17-CV-16, 2018 WL 1868106, at *5 (E.D. Tex. Mar. 15, 2018). Specifically, plaintiffs claimed that the defendant was "paying employees under pseudonyms and false social security numbers at a regular hourly rate for any hours worked beyond forty." *Id.* at *1. The court explained that "the [p]laintiffs' allegation that the [d]efendants required the pseudonym scheme to avoid paying overtime wages [was] logically related to the [d]efendant's counter-assertion that the [p]laintiffs carried out the scheme themselves." *Id.* at *5. "The same aggregate of operative facts serve[d] as the basis for both claims because both cannot be true at the same time. The [d]efendant's legal right to allege state law counterclaims for fraud, conspiracy, breach of fiduciary

16

duties, and conversion [arose] from the aggregated facts at issue in the case." *Id.* As such, the court held that the defendant's counterclaims arose from the same transaction or occurrence as the plaintiff's claims, and thus, the counterclaims were compulsory. *Id.*

Moreover, in *Solano v. Ali Baba Mediterranean Grill, Inc.*, the Northern District of Texas explained that the plaintiff's Fair Labor Standards Act claim and the defendants' counterclaims for theft of services and fraud shared a logical connection because they focused on the amount of overtime pay owed to the plaintiff. *Solano v. Ali Baba Mediterranean Grill, Inc.*, No. 3:15-CV-0555-G, 2015 WL 7770893, at *5 (N.D. Tex. Dec. 3, 2015). In order for the plaintiff to prove his Fair Labor Standards Act claim, he would have to "present evidence showing the overtime hours he worked and how much the defendants should have paid him." *Id.* Similarly, for the defendants to prove their claims for theft and fraud, they would have to "show that the plaintiff appropriated the defendants' money through some unlawful means" and that "the plaintiff billed them for false or inflated overtime hours[,]" respectively. *Id.* "If the defendants prove[d] their counterclaim for theft of services or fraud, the plaintiff [would not have been] able to recover for any overtime hours that he did not work." *Id.* As such, the court found that there was a logical relationship between the operative facts and evidence needed to prove the plaintiff's Fair Labor Standards Act claim and the defendants' counterclaims for theft of services and fraud. *Id.* Accordingly, the court concluded that the defendants' counterclaims for theft of services and fraud were compulsory. *Id.*

In the instant matter, Mr. Lee's reconventional demand and SEMS' complaint do not arise from the same aggregate of operative facts. Mr. Lee's reconventional demand, in *SEMS I*, detailed that Plaintiff violated the ADEA and the LADEA when it subjected Mr. Lee to age discrimination and retaliation during his employment. (Doc. 20-3 at 15, 22; Doc. 20 at 2.) In the reconventional demand, Defendant explained that he was a member of a protected age class, that he was

17

performing his job at SEMS adequately, yet Plaintiff replaced him with a younger employee. (Doc. 20-3 at 5.) Defendant further detailed numerous alleged instances of discrimination and retaliation. (*Id.*)

However, in Plaintiff's instant complaint, Plaintiff alleged that Defendants violated the CFAA, DTSA, and LUTSA. (Doc. 20 at 3.) To prevail on these claims, Plaintiff will need to prove that its trade secret was misappropriated by Defendants and that it suffered "losses" and "harm" as a result. (*See* Doc. 1 at 7–13.) Specifically, Plaintiff claims that "both during and after their employment . . . Mr. Lee and Ms. Naquin unlawfully accessed and used the company's confidential and proprietary information . . . to solicit business" on behalf of Bruin – the company where Mr. Lee acts as the managing member. (Doc. 20 at 3 (citing Doc. 1 at 7–13).) Plaintiff also claims that Defendants unauthorizedly used its computer software. (Doc. 20-2 at 3–4.) As such, Plaintiff's claims in *SEMS II* and Mr. Lee's assertions in his reconventional demand are "inapposite from one another" and also "stem from different sets of facts." (Doc. 20 at 7.)

Additionally, the mere fact that Mr. Lee's reconventional demand in *SEMS I* and Plaintiff's claims in *SEMS II* arise from a shared employment relationship between the parties is insufficient to demonstrate a logical relationship. *See Iniesta*, 2018 WL 3912256, at *1–2, *3. Without a logical relationship between the claims, Defendants cannot contend that the claims arise from the same transaction or occurrence. *Plant*, 598 F.2d at 1360. Because Plaintiff's claims do not arise from the same transaction or occurrence as Mr. Lee's reconventional demand, Plaintiff's claims do not constitute a compulsory counterclaim, and accordingly, Plaintiff was not required to bring the claims as counterclaims-in-reply. *See* Fed. R. Civ. P. 13(a)(1).[3]

---

[3] The Court notes in closing that both parties assume that Federal Rule of Civil Procedure 13 governs the effect of *SEMS I* on this case. But, *SEMS I* was originally filed in state court and has now returned there. Neither party raises the question of whether Article 1061 of the Louisiana Code of Civil Procedure, governing compulsory reconventional

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion to Dismiss for Failure to State a Claim* (Doc. 8) filed by Richard W. Lee, Hannah Naquin, and Bruin Environmental and Remediation Services, LLC, is **DENIED.**

Signed in Baton Rouge, Louisiana, on September 21, 2023.

_____
**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

---

demands, applies as to the effect of *SEMS I* on any compulsory counterclaims SEMS may have. Given Defendants' failure to brief this issue, they have waived any argument that a different result would be warranted under Article 1061. *See Payton v. Town of Maringouin*, No. 18-563, 2021 WL 2544416, at *26 (M.D. La. June 21, 2021) (deGravelles, J.) (collecting authorities on waiver), *aff'd,* No. 21-30440, 2022 WL 3097846 (5th Cir. Aug. 3, 2022)

In any event, even if Article 1061 were applied, a different result would likely not be warranted. Article 1061 and Rule 13(a) apply the same standard concerning what is compulsory. *Compare* Fed. R. Civ. P. 13(a) (" A pleading must state as a counterclaim any claim that—at the time of its service—the pleader has against an opposing party if the claim: (A) *arises out of the transaction or occurrence that is the subject matter of the opposing party's claim*; and (B) does not require adding another party over whom the court cannot acquire jurisdiction." (emphasis added)), *with* La. Code Civ. Proc. art 1061(b) ("the defendant in the principal action shall assert in a reconventional demand all causes of action that the defendant may have against the plaintiff *that arise out of the transaction or occurrence that is the subject matter of the principal action*." (emphasis added)); *see also* 1 Frank L. Maraist, *Louisiana Civil Law Treatise* § 7:2 (2d ed. 2021) ("The procedural device by which a defendant asserts an action against a plaintiff is the reconventional demand. It is the functional equivalent of the counterclaim at common law and in federal procedure. Both federal and Louisiana procedure make some counterclaims compulsory. In Louisiana, a reconventional demand is compulsory if it 'arise[s] out of the transaction or occurrence that is the subject matter of the principal action.'" (citations omitted)). That is to say, Plaintiff's counterclaim-in-reply would not be compulsory under Louisiana or federal law.